May it please the court, Deputy Attorney General Amanda Lloyd on behalf of Respondent Appellant, and I'd like to reserve two minutes for rebuttal. The District Court's decision should be reversed because the petition was moot due to Delaplane's intervening release from prison, and because the State Superior Court did not unreasonably apply to some event standard and affected the time of the State Court's decision. On the mootness issue, how do you deal with McQuillian v. Duncan? Yes, McQuillian is distinguishable here because that was a parole rescission case. McQuillian had already been found suitable for parole, and he had an established parole date, whereas Delaplane here had been found unsuitable for parole by the Governor. Therefore, he did not have a set date. But as far as how long his term of parole would extend, he very much has an interest in that, and whether or not it gets dated back to the date that the decision should have been rendered otherwise, if were we to agree with the petitioner for the habeas. Yes, and as this Court recently held in Haggard, the Federal Relief cannot exceed the scope of the liberty interest as defined by the State. And here, State statutes and case law are clear that the parole term does not begin until after an inmate has been released from prison. Even if there was an error in the date of release? Even if there was an error. There is no State court that has awarded credits or discharged towards a parole term after finding a Governor parole decision was a violated due process. Many State courts have ordered the Board's decision reinstated and ordered the inmate's release, but no State court has ever ordered basically credits towards the parole term. Even in Lawrence, the California Supreme Court affirmed the Court of Appeals' release order but did not order an additional credit toward a parole term or discharge of the parole term. So what's the remedy here? There is no need to address the remedy because Galloping was released during the proceedings and the petition should have been denied his moot. He had already received the remedy that he may have had under the law and therefore there was no issue left to be decided. Well, he should have been released earlier. As I said, in Haggard this Court found that the liberty interest is defined by the State and again the State has never found that discharge or reduction of a parole term is a proper remedy when a Governor's parole decision is found to violate due process. The liberty interest is released. I'm not sure that... We have to look to State law to define the liberty interest to determine whether it is a due process violation. But in defining the specific remedy, what constrains us to look to what the State is willing to do to correct an acknowledged violation of due process? Well, as this Court found in Haggard, the liberty interest is defined by the State and in Prather, the liberty interest... In Haggard, what was the issue was whether you get released at all. Once it's determined that the petitioner is entitled to release, why is it that we are limited to what the State is willing to do with regard, for example, to shortening the term of parole supervision? We would argue that because this Court is looking to what the State Court's standards, it should also look toward what remedies the State Court has ordered. Why? Because again, State statutes and case law do not... We look to the State law to define what the liberty interest is. I don't know that there's anything that says we look to State law to define what the remedy should be. No. But even looking toward Federal law, the United States Supreme Court in Samson v. California has acknowledged that it... It repeatedly acknowledged that a State has an overwhelming interest in supervising parolees because they are likely to commit future offenses. But you're going backwards. I mean, the case law has now made it very clear that the original offense is inadequate for purposes of some evidence. You can't use that. So once there's a determination under State law that there is no evidence in this case sufficient to keep the person confined, it sounds like what you're telling us is the fact that a State court has never found that you can retroactively move back the date when the person should have been released and give him relief that way. As long as the person is within the parole system, it's like he's incarcerated. It's a modified form of incarceration. If the person were still in jail, you wouldn't be making this argument, would you? It has to serve a longer period of time because no court has ruled on the extent of the liberty interest established under State law? No, but you have to, again, look at the policy reasons behind parole. And as California has determined that parole is an important transition period from incarceration, here it's a short three-year parole term, whereas now... It may be short to you, but for somebody that's on parole, it's not very short. Yes, but now bail pain would be subject to a lifetime parole term. Here, in relation to that, it is a short term. I'm really having difficulty understanding the State's argument on this. I mean, the reality is under Hayward, Haggard, and the like, it's clear that we look to State law. There is a liberty interest under State law, but you're telling us that State courts have not construed that liberty interest in a way that would give relief here and that this has moved. The guy has nothing further to do, at least in the federal court. And Judge Clifton and I, I think, both are saying, how can that be? There is a liberty interest. Everybody concedes that. It's based on State law. There has been presumably a wrong here. The guy was let out presumably based on the fact there was a mistake the first time. So if there was a mistake the first time, just go with me hypothetically on this, if there was a mistake the first time, why is it moot to consider whether we should order or send it back to the parole board for purposes of readjusting the date? First, we don't agree that it was decided wrongly the first time. Of course, that is the second part of our argument here. We believe that there is some evidence in the record, and even if this Court looks to State law, that under State law at the time of the State court's decision, which EDPA directs courts to look at Supreme Court holdings at the time of the decision. But the State Supreme Court has spoken since that time in a way that suggests that what the trial court believed was the applicable standard the first time was not correct. And the State Supreme Court did not speak in terms that suggested it was entering a brave new world. It acted as courts customarily do even when we turn a page, like this is the same old stuff applied in a new circumstance. So I'm not sure that we can say that we have to go back in our minds to the State law that existed at that time as opposed to what we know from the California Supreme Court the State law is supposed to be. Well, State courts are in the same position as Federal courts with respect to changes in the law and cannot be held to a higher standard such as Lawrence that did not... The State Supreme Court holds them to a higher standard? How is it we're not supposed to? Under Rosencrantz and Dannenberg, the Superior Court's decision was proper. It found that the Governor's decision was supported by some evidence, and Rosencrantz and Dannenberg allowed the Executive to rely solely on the commitment offense. But if this Court determines that Lawrence should control here, the proper remedy in this case would be to send the case back and let the Governor review the decision under Lawrence. Well, the California courts themselves appear to have rejected that approach as well. The California Courts of Appeals are saying no, the rule doesn't apply for when the Governor switches the Parole Board's decision. It may apply when the Parole Board denies, but when the Parole Board grants and the Governor reverses, the California Court of Appeals has said, you let him go. Some courts, especially in post-Lawrence decisions, have. There is In re Ross is a Third District Court of Appeals case where the court said send it back to the Governor to decide under Lawrence and give the Governor a second chance to satisfy this newer standard. But Frather doesn't require that, does it? Frather was a Board case. Right, but didn't that hold that when the Board improperly denied parole that the correct remedy is to send it back to the new parole hearing rather than automatically release the prisoner, but left Lawrence intact? Yes, but the Supreme Court did send it back and have the Board review the case under the new standard. So sending it back to allow the Governor to do the same thing would be consistent with Frather, not against it. But inconsistent with Lawrence? You're suggesting that Frather itself modified Lawrence, but didn't say that? No, and Lawrence, again, it did only affirm the Court of Appeals release order. It did not add the extra time for any credits after release. I'll save the rest of my time for Bill. All right. Good morning, Roger Hanson for the epilee. I'm so very seldom. I'm not used to being the epilee. That's right. You know, I saw your name here. I wondered maybe it was your son who was coming up. You've been around a long time, Mr. Hanson. Well, I only have three daughters, and only one of those daughters gave me a female child, so I have one grandchild, so I don't have a son that I know of. We're delighted to hear that. Your wife is, too, undoubtedly. Well, I would like to – You had an appeal that Judge Ely ruled in your favor on. Is that right? That's correct. He did the work. You got all the credit. He used to complain about that to me, but he's gone, you know. Sorry, Walter. You've been fighting these battles for a long time. That goes back into the 60s, doesn't it? Yes. What was that case about? Oh, I don't know. My first case was kind of a big murder case that I won. I kind of got hooked on crime. I don't know what it had to do with the standard for determining insanity. I'm not sure. I don't think so. You better look it up. All right, I'll do that. He moved away from McNaughton to the standard that District of Columbia was using. I'm not sure. You better look at your old newspaper clippings. Well, I'm not sure what you want me to talk about, but I gather from the absence of any questions that the issue of Hayward v. Marshall is not before the court, because I noticed that two cases, Pearson v. Muntz, 606, Fed Third, 606, and Cook v. Solis, 606, Fed Third, 1206, has one of the members of this panel on both those decisions. And since there was no questions asked of the panel in challenging this, I assume that the big issue, which I thought would be the issue, is this parole situation. Pearson's rescheduled. We haven't set the date yet, but it's going to be rescheduled. Waiting on Hayward. Waiting on Hayward. And a few others. Well, Hayward v. Marshall has been decided. I understand. We were waiting on it. Oh, yes. For two and a half years, we were waiting on it. Well, this gets back. Let me make this pitch to this court. I think this delay is much more egregious than one would believe to start with, because you go back to Greenholz v. Inmates of Nebraska Prison System, which is a 1979 case, which was the first case I think the Supreme Court took a look at, and then it followed with the Board of Pardons v. Allen in 1989, which is the second time the Supreme Court took a look at it. And I think if you take a look at the Board of Pardons v. Allen, that prescribed the exact way that this should be looked at by any other court. And at footnote 10 of Board of Pardons v. Allen was about 20 state cases that had been decided by courts of appeals around the country and found four categories. Number one, whether there was a liberty interest, or number two, whether there was no liberty interest, or whether sometimes there was some suggestions that were added to a non-overt pronunciation of liberty interest to give a liberty interest. And finally, even if there was some pronunciation that could be suspected to be a liberty interest, the particular state allowed the parole board to not apply it. So there was those four categories, which I'm saying to the court, was a beacon to all courts all over the country, including the California Supreme Court, to take a look at that. And strangely enough, in 2002, in the first case of Rosencrantz, they never talked about liberty interest. They decided that on the basis that Rosencrantz was a closet homosexual and he was afraid that his brother and his friend was going to rat him off to his father. So he gets so concerned about it, he gets an Uzi and practices for a week and then goes and kills this guy. So there's no question, in my mind, it was a premeditated first-degree murder case. Fortunately for him, they come back with a second on it. Same way with Dannenberg. Dannenberg supposedly hit his wife with a pipe, stunned her, and then carried her to the bathtub and drowned her. And so, ostensibly, there was a premeditation period. Again, that came in with a second-degree case with the jury. So the Supreme Court took a look at that in both those cases, and they said, well, because he could have been convicted. Both these people, Rosenberg and Dannenberg, could have been convicted first. They ought to be very lucky that they only got second, and that's good enough for us. They took a look at all the 15 CCR, 2402, C-like cat, immutable negative factors, and didn't apply them at all. They didn't cause them to be transmogrified in some nexus, and we don't get that until, finally, Shapoosin won. This is fascinating, but what does that have to do with this case? Well, I'm saying to the court that there is a huge, much more huge delay in this case until, you know, it's many years of delay. And we're all talking about here, what, another year or so of a parole period. And I think there's no question the court should apply what I think is law that has been, let me read out of Pirtle, 611 Fed 3rd, 1015. It appears quite often, but at page 1025, it says, Federal courts have the latitude to resolve a habeas corpus petition, quote, as law and justice requires, 28 U.S.C. 2243. Ordering the release of a prisoner is well within the range of remedies available to federal habeas courts. Habeas lies to enforce the right to personal liberty. When that right is denied, a person confined to federal courts has the power to release him. I think that sums up what has to be done in this particular case. What's your best case for, to oppose the government's position that this matter is moot in light of the fact that Mr. Delaplane has been released? Well, because I think the court found it here that it's not moot because he still has a handicap. I understand. I'm just asking what case, what's the best case that you would cite to oppose the government's position on mootness? Well, I don't have that in my notes, but I didn't think that was an issue here. I'm sure it's not moot. As long as there was some handicap over his head, it's not moot, and I think the opinion of the federal court, district court, found it that way. So I do encourage the court to take a look at the fact that this is a deprivation of release for a lot longer, a lot longer, like many decades, if you go back to the courts of Board of Pardons v. Allen that could have been applied to the California courts and they did not. Any other questions? Well, good to see you're still kicking. Thank you, Your Honor. How old are you now? 78. Just a lad compared to him. I'm 10 years older than you. I am four score and seven years. You're not even close to it. You've got to take the right pills to keep going. You have to talk to my wife about that. But you always seemed old to me. You don't need to respond to that. Maybe it's because you've always been so serious. Well, I try to do a thorough job sometimes. You're a good lawyer. Thank you. Damn good lawyer. You can order a copy of the transcript. I'd just like to raise another point regarding the mootness issue here. The issue here is not whether or not Dale O'Kane should have been released, but whether he's entitled to this additional time against his parole term. And the United States Supreme Court can provide guidance here. In U.S. v. Johnson, 529 U.S. 53, in construing a federal statute that is similar to the California statutes here, the United States Supreme Court denied the petitioner credits toward his parole term, even for extra time he had served on two convictions that were vacated. So here we're talking about even less of a liberty interest than having convictions vacated. And that should be a consideration here. What about Spencer v. Kemna? In that case, the Supreme Court said the petition for habeas corpus is not moot so long as the petitioner shows, in quotes, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision. Right. And here Dale O'Kane is not suffering an actual injury because he was released during the pendency of the proceedings. Right. But had it been granted at an earlier point, when he originally filed, the parole would have been over at an earlier point. He would have been released sooner, but that doesn't change the fact that the parole term doesn't start until he's released under this United States Supreme Court law and under state law. I had a case involving a guy that was accused of child molestation, didn't get a fair trial. He had served his full sentence and been out for a year when we found he was denied a fair trial, and we reversed his conviction. Would you say that we should have let that go? It would have been moot. Could he have already served his full sentence? No, I think that that is a different situation here. We're not discussing his conviction. Dale O'Kane's conviction stands, whereas that conviction could do something to see that. But I mean, the reality is his freedom, his, you know, his, you know, what he's listed on, what he's listed on, whether he can get jobs and so on, all of that's affected by whether this man remains on parole longer. I understand a lot of your arguments have some solid basis, but I'm in trouble by this mootness concept. As long as he can get some relief from a court, it's not moot. And as long as a court can remedy something that has occurred, that has a current effect on him. Again, he has already been released, so the only issue is this credit. It's been the law for a long, long time, even before the time that Mr. Hansen passed the bar. And so I don't really understand why you're arguing that point. He's got a disability. You know, he's on parole. And he would still be on parole. And so that's a problem. So it's not moot. A parole officer can come in and wake him up at 3 in the morning and search his house or whatever. It is moot to the extent that he has already received the only relief that he would be entitled to under this law. And under the United States Supreme Court in U.S.C. Johnson, again, they did not award those extra credits. You've been careful. I'm not familiar with the case, but you've been careful not to say that the Supreme Court said they couldn't award, simply they didn't award it in that case. The Supreme Court said that the parole period cannot begin until the inmate is actually released from prison and, therefore, that he cannot receive credits for his parole term. And did it say that a court could never order the shortening of a parole term? I don't believe it went that far. What was the citation to Johnson? 529 U.S. 53. It's from 2000. I'd just like to conclude. Because Dale Payne was released, the district court proceedings were complete and the petition should have been denied as moot. But even if not moot, the state superior court did not unreasonably apply the state court some evidence standard in question at the time. Okay. Thank you very much. This matter is submitted. And now we come to Murr v. Marshall.
judges: Pregerson, Clifton, Smith M.